Curia, per
Withers, J.
Our rule, touching the question in this case, certainly is, that upon a sale and delivery of goods, the promise to pay, as implied by law, is not discharged, as a cause of action, by merely receiving a note, whether executed by the debtor or a third person, for the existing debt. To discharge the *62 existing cause of action, such note must be received in payment of the debt arising upon the sale and delivery. Of course payment of the note, before only collateral, extinguishes the original cause of action. In the present case, Stevenson & Walker did give their notes for such an original cause of action, and the question is, whether those notes, when rendered up to Stevenson, under the circumstances stated in the report, were paid, discharged, or extinguished; or whether this was such a disposition of them as was equivalent thereto ; for it is proper to remember that the doctrine we are to consider is not confined to an actual satisfaction of the notes by a payment in money. If the notes, given as those in question were, be beyond the power and control of the creditor in other hands, though he (the creditor) might stand under a certain liability to pay them as endorser, if, being in other hands, he cannot procure them on the trial to be can-celled, such a condition of affairs is equivalent to the payment of them in fact, for the purposes of our present inquiry.
Were the partnership notes of the defendants extinguished by rendering them up to Stevenson for his own notes in “substitution” and “'exchange ?”
The cause comes to us as if on facts agreed, or found by special verdict. The non-suit was not in invitum ; if the facts had been disputed, of course they must have gone to the jury with instructions.
The plaintiffs were informed that the partnership between defendants had been terminated; that Stevenson had agreed with Walker to assume the payment of the partnership debt owing to plaintiffs, and Stevenson sent his individual notes, and received, without qualification or restraint, the partnership notes in lieu of his own, in exchange for them.
In Thompson vs. Percival, (King’s Bench, 27 Eng. C. L. 241) the action was for goods sold and delivered to Charles and James Percival as partners. They had dissolved partnership. Thompson & Co. were advised by James (who was authorized to receive and pay the joint credits and liabilities) that they must look to him (James) alone for their debt. Thompson & Co. drew on *63 James, at three months, and the hill was accepted hut dishonored. On this case, a verdict was taken for the full amount for plaintiffs, with leave to move for a non-suit, if the Court should be of opinion that the plaintiffs had discharged Charles Percival. A new trial was ordered, that the question might he put specifically to the jury, whether the plaintiffs expressly agreed to take, and did take, the separate hill of exchange of James in satisfaction of the joint debt. The case was adjudged on solemn argument and consideration. It is scarcely doubtful, that if the jury had. found, in that case, the further fact, that Thompson & Co. had taken the hill of exchange expressly in substitution and in exchange for partnership notes, surrendered unconditionally to James, Charles would have been exonerated: in other words, the original cause of action, then sued upon, would have been extinguished.
It is not questionable, that if a creditor of one take the hill or note of a third person in payment of a demand against another or in satisfaction, he cannot resort to the original cause of action. Now in such a transaction, one partner is regarded as such third person; undoubtedly so after a dissolution known to the creditor. The terms of his note or bill, import that he is a mere individual, or third person, and is dealt with accordingly.
The question is, what was the intention and understanding of the plaintiffs and Stevenson ? Were the notes of the latter intended, on both sides, as an extinguishment of the partnership notes? It cannot be, that such intention or purpose may not be derived as satisfactorily from acts as words. Suppose the plaintiffs, on receipt of Stevenson’s individual notes, had burnt up the others; they have, however, done that which is equivalent; they enabled Stevenson to do it. If Stevenson had done so, he would have exercised but a legal right, as the case is presented to us. Surely if any transaction could extinguish the notes more effectually, in contemplation of law, as it regards the rights of these plaintiffs, it does not readily occur to us. Now we exclude from contemplation all question about fraud, on the part of Stevenson, in obtaining the partnership notes, or fraud in de- *64 hiding the plaintiffs into a reliance on him. Nothing of that appears as an element in the case. In such case the notes, if burnt, would practically survive for the use of the plaintiffs. Could these notes have been regained by the plaintiffs by an .action of trover against Stevenson 1 It is not perceived how that can be maintained.
We have been pressed with the authority of our own case of Barelli, Torre & Co. vs. Brown & Moses, (1 McC. 449.) The facts, stated by the reporter, do raise a strong resemblance between this cause and that. But the opinion pronounced, with one fact specified, exhibits a feature of distinction. Brown & Moses owed a general account to the plaintiffs there, for sales of their goods at auction. One item of it was, a sale to Lazarus, for $ 1100. It was a stipulation that, in consequence of the extensive patronage received from the plaintiffs, they were allowed to reject, at discretion, securities received by Brown & Moses from purchasers, and charge these auctioneers themselves. They did so as to the note of Lazarus, endorsed by another; and Brown & Moses gave their own note (it would seem) for that item. When accounts came to be settled, Moses attended for that purpose. A balance of $1,866, was acknowledged by Moses to bo due by Brown & Moses to Barelli, Torre & Co.; but that balance was made up, in part, by charging in the partnership account this item of $ 1,100, being the proceeds of sales to Lazarus. That is the distinguishing particular, to which reference has been made. It is said in the opinion of the Court: “ and as to the note of §¡1,100, given for Lazarus, either of the defendants was at liberty to regard the consideration of that note as a part of the general account of the plaintiffs, and to strike the balance as if no such note existed.” (From this it might be supposed that the partnership was not then dissolved.) Although, therefore, it is stated, as a part of the case, that the note of Brown & Moses “ was settled,” it niust be inferred that it was settled only by charging its amount, with the binding concurrence of Brown & Moses, through one of them, in the partnership account against them. This was literally treating that note “ as if no such note *65 existednot that it ivas extinguished by taking a note from Moses, for that amount included in the general balance, but by replacing the sum it was given for, on the debit side of the original account against the partnership, who were sued, or by leaving it there to enter into the reckoning. If Stevenson had readjusted the partnership account with the plaintiffs, and treated the notes rendered up to him in the same manner as Moses did, and it was assumed that he had a right to represent Walker in such transaction, as it was assumed that Moses had to represent Brown, we should have had cases nearer parallel than these appear to be. In this case, as in that, it would be impossible to say that the original indebtedness was intended to be extinguished, when the act done expressly reaffirmed it, or left it intact. No matter what case it may be thought could have been presented out of the facts that appeared in Barelli, Torre & Co. vs. Brown Moses, that which the Court considered before them was no more than an adjustment of accounts between creditor and partners, a balance struck, and the note of one partner taken. for such balance, with no evidence to show whether it was taken in satisfaction of the partnership debt or not. Where the act is of doubtful import, joined to the facts that no new security is gained, and the note taken is subsequent to the original credit, the presumption might be that it was not a case of accord and satisfaction ; much more, when the very act itself involves an affirmation that the joint liability is still insisted on. That Brown & Moses’s note was “ settled,” imports no evidence that it was paid, or that the absent partner was released, where in the act of settling it the absent partner was expressly charged. When the note of Moses was taken, the Court regarded Brown & Moses to have been in the situation occupied by Stevenson and Walker when they gave their notes to the plaintiffs in this case. We have, therefore, in the present instance, all that occurred between our plaintiffs and Stevenson, as additional matter.
The case of Chastain v. Johnson (2 Bail. 574,) affirms only the generally recognized principle, that a note received from the debtor, at the time of goods sold and delivered, does not extin *66 guish the right of action on the quantum valebant, if the note he not passed away, is destroyed, or rendered up ; and that a void note (and it may he added, a substituted security founded on fraud) received in lieu of such a note, does not shake the right to sue on the primary cause of action.
It has been earnestly and ingeniously insisted, that there is no evidence of an agreement between Stevenson and the plaintiffs, nothing but a mere act, to wit: the delivery of two partnership notes, the one directly, the other by order. It is, indeed, correct to say, that no agreement now subsists, none unexecuted; but there is something stronger, more unequivocal. Stevenson proposed to substitute and exchange his notes for the others; if the plaintiffs had answered they would, and there rested, then there would have been an agreement. When they did more, when they actually acquiesced, and made the exchange, there was not only an agreement, but one executed.
And this leads to the remark, that there seems little foundation for the position, that there was no consideration to support the transaction. If the plaintiffs could have extinguished the partnership notes for a pepper corn, or as a gratuity, if they could have been paid by rendering a worthless chattel, it would seem that proof of a pecuniary advantage is by no means demanded as the indispensable quality of a legal consideration, where the act has been, deliberately and without fraud, actually performed, to which the party performing was moved. Here was an executed contract, or understanding; Stevenson’s notes were the consideration ; they were not void. It is well to consider upon what ground, other than fraud proved, a rescisión of the executed contract, in order to regain the partneiship notes, could have been, or could now be, successfully urged upon the forum proper for the question.
In the case of Thompson vs. Percival, heretofore cited, the question of consideration was also urged. Lord Denman, in speaking of that point, observed: “ Many cases might be conceived, in which the sole liability of one or two debtors may be more beneficial than the joint liability of the two, either in res *67 pect to the solvency of the patties, or of the convenience of the remedy, or in various other ways ; and whether it was actually more beneficial in each particular case cannot be made the subject of inquiry.”
In the case of Sheehy vs. Mandeville & Jamesson (6 Cranch, 253,) Ch. J. Marshall observed as follows: the note of one of the parties, or of a third person, may, by agreement, be received in payment. The doctrine of nudum pactum does not apply to such a case ; for a man may, if such be his will, discharge his debtor without any consideration. But if it did apply, there may be inducements to take a note from one partner, liquidating and evidencing a claim on a firm, which might be a sufficient consideration for discharging a firm.”
The plaintiffs must have considered the demand on account, against Stevenson & Walker, extinguished, else why urge Stevenson, as they did in their letter without date, to execute other notes in the name of the partnership 1 If they considered their books as establishing a joint liability, why urge Stevenson, after the dissolution, to attempt to bind the partnership by new notes ?
We think that facts appearing on the plaintiffs’s part justified such instructions as the Judge proposed for the jury ; that the transaction between the plaintiffs and Stevenson produced no result short of a discharge of the partnership.
We can by no means acquiesce in the idea, that the partnership notes were in Court to be cancelled. They came there directly from the possession of Stevenson, and belonged to him.
The motion must be refused.
Evans, Wabdlaw & Frost, JJ. concurred.
O’Neall & WhitneR, JJ. dissented.

Motion dismissed.